J-S23020-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WILLIAM PLUMMER | |
| Appellant | No. 1424 EDA 2015 |

Appeal from the Judgment of Sentence April 27, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003689-2014
CP-51-CR-0003690-2014
CP-51-CR-0015155-2013

BEFORE:  PANELLA, J., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY OTT, J.:                      **FILED JUNE 16, 2016.**

William Plummer appeals from the judgment of sentence imposed on April 27, 2015, in the Court of Common Pleas of Philadelphia County, following his conviction by jury on charges of robbery, robbery of a motor vehicle, aggravated assault (two counts), arson, risking a catastrophe, conspiracy (two counts), intimidation of a witness or victim, retaliation against a witness of victim and contraband.[1,2]   Plummer received an

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The charges were originally listed on three separate criminal complaints as reflected in the caption.  All complaints were consolidated, without objection.

[2] 18 Pa.C.S. §§ 3701(a)(1)(ii), 3702(a), 2702(a)(1), 3301(a)(1)(i), 3302(b), 903(c), 4952, 4953 and 5123, respectively.

aggregate sentence of 20-40 years' incarceration. In this timely appeal, Plummer claims there was insufficient evidence to support his convictions on the charges related to the arson; intimidation and retaliation; and robbery of a motor vehicle. After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

The facts as related by the trial court in its Pa.R.A.P. 1925(a) opinion are supported by the record.

> On September 29, 2013, at around 1:00 a.m., Ronald Elliot left his girlfriend, Kandis Fowler's, home at 3601 Conshohocken Avenue and went to the apartment building's parking lot. [Plummer] and two other men, holding fake police badges, jumped out of the bushes and yelled "Freeze, Police." Elliot ran out of the parking lot and across the street as the three men chased him. [Plummer] stopped pursuing Elliot and acted as a lookout standing on the sidewalk on the parking lot side of the street while the other two men caught Elliot across the street. After the two men hit Elliot four or five times in the head with a firearm, cutting him on the head, the two men took Elliot's watch, money and car keys. The men joined back up with [Plummer] and all three men ran to the parking lot. Elliot saw [Plummer] drive off in Fowler's Ford Expedition.
>
> On February 5, 2014, after [Plummer] had been arrested and charged with robbery of Elliot, Elliot received multiple phone calls from [Plummer]. [Plummer] threatened Elliot, explaining that if Elliot attended the next court date [Plummer] was going to firebomb the homes of Elliot's mother, girlfriend, and grandparent and kill Elliot.[3] On February 9, 2014, Elliot went to Fowler's parent's house located on Washington Lane, where Elliot observed that there had been a small fire in the back yard of the house.

---

[3] Elliot also testified Plummer threatened his girlfriend's parents' home. **See** N.T. Trial, 2/10/2015 at 88.

On February 9[,] 2014, Valerie and Russell Fowler, Kandis Fowler's parents, were living in a row home on Washington Lane. At about 4:00 a.m., Valerie Fowler heard a "bang" and smelled smoke. Russell Fowler went downstairs and saw a small fire in the back yard. After the fire was extinguished, Russell Fowler noted that the first floor back window was broken and saw a bottle with a wick in it in the back yard.

Detective Timothy Brooks of the Philadelphia Police's Bomb Disposal Unit and an expert in arson explosives arrived at the Fowler's home on Washington Lane shortly after the fire was extinguished. Outside the back of the house, Detective Brooks observed two bottles with wicks in them, one intact and the other shattered, which he believed to be Molotov cocktails. Detective Brooks observed strike marks on the back window and a broken bottle at the bottom of the basement steps that indicated that a Molotov cocktail had struck the house and fallen to the ground. The intact bottle contained liquid and a cloth wick, which smelled of gasoline. Detective Brooks recovered the bottles, wicks, and liquid.

On February 9, 2014, Detective Kevin Sloan requested that Philadelphia prison authorities search [Plummer's cell]. The prison authorities recovered a cell phone in [Plummer's] cell. According to Cricket Communications' records, the cell phone recovered from [Plummer's] cell had been used to call Elliot four times on February 5, 2014.

[Plummer] testified on his own behalf. [Plummer] asserted that in the first week of September 2013, Elliot gave [Plummer] $15,000 to purchase drugs for him. [Plummer] kept the money but did not purchase the drugs. [Plummer] asserted that on September 29, 2013, he was not on Conshohocken Avenue but instead was in Norristown. [Plummer] explained that he was unable to run because he was shot many years before. [Plummer] admitted that he had called Elliot but claimed the call was to arrange to return Elliot's money in exchange for Elliot not appearing at trial.

Trial Court Opinion, 6/4/2015, at 2-4 (citations to notes of testimony and footnote omitted).

The standard of review for claims of insufficient evidence is both well settled and oft repeated:

> With respect to such claims, we consider the evidence in the light most favorable to the Commonwealth as verdict winner. ***Commonwealth v. Barnes***, 871 A.2d 812, 819 (Pa. Super. 2005). In that light, we decide if the evidence and all reasonable inferences from that evidence are sufficient to establish the elements of the offense beyond a reasonable doubt. ***Id****.* We keep in mind that it was for the trier of fact to determine the weight of the evidence and the credibility of witnesses. ***Id****.* The jury was free to believe all, part or none of the evidence. ***Id****.* This Court may not weigh the evidence or substitute its judgment or that of the factfinder. ***Id****.*

***Commonwealth v. Devries***, 112 A.3d 663, 667 (Pa. Super. 2015).

> Additionally, we note:

> Admittedly, guilt must be based on facts and conditions proved, and not on suspicion or surmise. ***See Commonwealth v. Swerdlow***, 431 Pa.Super. 453, 636 A.2d 1173 (1994). Entirely circumstantial evidence is sufficient so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. ***See id***.; ***see also Commonwealth v. Chmiel****,* 536 Pa. 244, 247, 639 A.2d 9, 11 (1994). Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. ***See Commonwealth v. DiStefano****,* 782 A.2d 574, 582 (Pa. Super. 2001), *appeal denied,* 569 Pa. 716, 806 A.2d 858 (2002).

***Commonwealth v. Moreno***, 14 A.3d 133, 136 (Pa. Super. 2011).

In his first claim, Plummer argues there was insufficient evidence to support his convictions on the charges associated with the firebombing of the Fowler residence. Essentially, Plummer claims that the person or persons who threw the two Molotov cocktails were never identified, Plummer

was incarcerated at the time, and there is no evidence linking him to the unknown perpetrators. Therefore, he posits he should not have been convicted of aggravated assault, arson, conspiracy, and risking catastrophe. We disagree.

We begin by noting that Plummer is not arguing that the crimes themselves did not occur, but that there is insufficient evidence to demonstrate he was a participant in the criminal activity. Here, the trial court heard evidence that Plummer called Elliot while he was incarcerated and threatened to firebomb a number of people, including the Fowlers, if Elliot persisted in prosecuting the robbery charges against him. Mere days after the threatening phone calls, the Fowlers' home was, indeed, firebombed. The jury, examining the totality of the circumstances, was allowed to infer that the threat of firebombing the Fowlers and act of firebombing the Fowlers were not the product of random circumstance. Although the identity of the person who threw the incendiary devices was never determined, the jury, again, was allowed to infer from the evidence presented that Plummer engaged in a conspiracy to carry out his threats. "Circumstantial evidence may provide proof of [a] conspiracy. The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." *Commonwealth v. Jaquez*, 113 A.3d 834, 840 (Pa. Super. 2015) (citation omitted). The evidence presented was not "so weak and inconclusive that as a matter of law no probability of fact may be drawn

- 5 -

from the combined circumstances." *See Moreno*, *supra*. Accordingly, there is sufficient evidence to support Plummer's convictions of conspiracy and the remaining charges attendant to the firebombing of the Fowlers' residence.

Next, Plummer argues there was insufficient evidence to support his convictions on the charges of witness intimidation and retaliation. These arguments are woefully undeveloped. Plummer simply argues there was no corroborating evidence to support Elliot's version of the phone calls and that Plummer testified he called Elliot to try to work out repayment of the $15,000 Elliot had given him to purchase drugs. This argument challenges the credibility of the witnesses and as such is an argument regarding the weight of the evidence. *See Commonwealth v. Griffin*, 64 A.3d 932, 939 (Pa. Super. 2013) (argument against the credibility of witnesses' testimony attacks the weight of the evidence, not sufficiency.) However, Plummer never challenged the weight of the evidence before the trial court. Accordingly, any such a claim is waived. *See Commonwealth v. Priest*, 18 A.3d 1235 (Pa. Super. 2011) (weight of evidence claim waived for failure to present claim in the lower court).

Regarding retaliation, Plummer refers to his argument in the first issue, claiming the Commonwealth failed to prove a link between him and the firebombing. We need not repeat our analysis to demonstrate the fallacy of this claim.

Finally, Plummer argues his conviction for robbery of a motor vehicle should be set aside for insufficient evidence because the Commonwealth failed to prove the vehicle was taken while in the presence of Elliot. Essentially, Plummer argues that Elliot was across the street from the parking lot when Plummer took Kandis Fowler's car, and therefore, the car was not taken in Elliot's presence.

Robbery of a motor vehicle is statutorily defined as follows: "A person commits a felony of the first degree if he steals or takes a motor vehicle from another person in the presence of that person or any other person in lawful possession of the motor vehicle." 18 Pa.C.S. § 3702(a). "Presence" is not statutorily defined. However, case law demonstrates that "presence" is satisfied when the victim is in the kitchen of her house when her car keys were taken from her and the car was subsequently taken from "just outside the door." *Commonwealth v. Bonner*, 27 A.3d 255, 256 (Pa. Super. 2011). Accordingly, "presence" does not require the victim and vehicle be in immediate proximity.

Here, the record reflects that as Elliot approached the vehicle in question, Plummer and two other men jumped out from behind some nearby bushes and confronted Elliot. The men then chased Elliot across the street before they were able to catch him and take the car keys from him. Elliot was near enough to the vehicle to see Plummer get into it and drive it away.

Essentially, Plummer is asking to be rewarded for having chased the victim away from the vehicle. We will not do so.

The crime began when Elliot was approaching the vehicle and was completed mere moments later, while Elliot was across the street. The only reason Elliot was not in the immediate proximity of the vehicle when it was taken was his attempt to escape the criminals. Under the undisputed facts of this matter, we find that as a matter of law, the car was stolen in Elliot's presence.[4] Accordingly, Plummer is not entitled to relief on this issue.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/16/2016

---

[4] Plummer asks this Court to conduct a "distance analysis", *see* Appellant's Brief at 26-27, to determine presence. We are unconvinced that such a specific analysis is currently necessary. Moreover, we do not believe the facts of this matter lend themselves to such line drawing.